## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| In re:<br><br>**BUHLER-FREEMAN MANAGEMENT, LLC**<br>      **Debtor.** | Case No. 3:21-02410<br>Chapter 11<br>Judge Walker<br><br>**DISCLOSURE STATEMENT DESCRIBING ORIGINAL CHAPTER 11 PLAN** |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 3
    A.    Purpose of This Document .............................................................. 3
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing ............ 4
        1.    Time and Place of the Confirmation Hearing ............................. 4
        2.    Deadline for Voting For or Against the Plan ............................. 4
        3.    Deadline for Objecting to the Confirmation of the Plan ............................. 5
        4.    Identity of Person to Contact for More Information Regarding the Plan .... 5
    C.    Disclaimer ...................................................................................... 5
II.    BACKGROUND ............................................................................................ 5
    A.    Description and History of the Debtor's Business ............................. 5
    B.    Management of the Debtor Before and After the Bankruptcy ............................. 5
    C.    Events Leading to Chapter 11 Filing .............................................. 6
    D.    Significant Events ........................................................................... 6
        1.    Bankruptcy Proceedings ........................................................ 6
        2.    Other Legal Proceedings ........................................................ 6
        3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers. 6
        4.    Procedures Implemented to Resolve Financial Problems .................... 6
        5.    Current and Historical Financial Conditions ............................. 7
III.    SUMMARY OF THE PLAN OF REORGANIZATION ............................. 7
    A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan ....... 7
    B.    Unclassified Claims ....................................................................... 7
        1.    Administrative Expenses ........................................................ 7
        2.    Priority Tax Claims ................................................................ 7
    C.    Classified Claims and Interests ...................................................... 8
        1.    Classes of Secured Claims ...................................................... 8
        2.    Classes of Priority Unsecured Claims ..................................... 9
        3.    Classes of General Unsecured Claims ..................................... 9
        4.    Class(es) of Interest Holders .................................................. 10
    D.    Means of Effectuating the Plan ..................................................... 10
        1.    Funding for the Plan .............................................................. 10
        2.    Post-Confirmation Management ............................................. 10
        3.    Disbursing Agent ................................................................... 10
    E.    Risk Factors ................................................................................... 10
    F.    Other Provisions of the Plan .......................................................... 11
        1.    Executory Contracts and Unexpired Leases ............................. 11
            a.    Assumptions .................................................................. 11

1

|  |  | b. | Rejections | 11 |
|  | 2. | | Changes in Rates Subject to Regulatory Approval | 11 |
|  | 3. | | Retention of Jurisdiction | 11 |
| G. | | | Tax Consequences of Plan | 11 |
| **IV.** | | | **CONFIRMATION REQUIREMENTS AND PROCEDURES** | **12** |
| A. | | | Who May Vote or Object | 12 |
|  | 1. | | Who May Object to Confirmation of the Plan | 12 |
|  | 2. | | Who May Vote to Accept/Reject the Plan | 12 |
|  |  | a. | What is an Allowed Claim/Interest | 13 |
|  |  | b. | What Is an Impaired Claim/Interest | 13 |
|  | 3. | | Who is <u>Not</u> Entitled to Vote | 14 |
|  | 4. | | Who Can Vote in More Than One Class | 14 |
|  | 5. | | Votes Necessary to Confirm the Plan | 14 |
|  | 6. | | Votes Necessary for a Class to Accept the Plan | 14 |
|  | 7. | | Treatment of Nonaccepting Classes | 15 |
|  | 8. | | Request for Confirmation Despite Nonacceptance by Impaired Class(es). | 15 |
| B. | | | Liquidation Analysis | 15 |
| C. | | | Feasibility | 18 |
| D. | | | Non-Compliance of the Absolute Priority Rule | 18 |
| **V.** | | | **EFFECTS OF CONFIRMATION OF PLAN** | **19** |
| A. | | | Discharge | 19 |
| B. | | | Revesting of Property in the Debtor | 20 |
| C. | | | Modification of Plan | 20 |
| D. | | | Post-Confirmation Status Report | 20 |
| E. | | | Quarterly Fees | 21 |
| F. | | | Post-Confirmation Conversion/Dismissal | 21 |
| G. | | | Final Decree | 21 |
| **VI.** | | | **SUPPORTING DECLARATIONS** | **22** |
|  | | | EXHIBIT A - LIST OF ALL ASSETS | 22 |
|  | | | EXHIBIT B – DEBTOR'S MONTHLY INCOME AND EXPENSES DURING THE PENDANCY OF THE BANKRUPTCY CASE | 23 |
|  | | | EXHIBIT C – LIST OF GENERAL UNSECURED CLAIMS | 24 |

# I.

# INTRODUCTION

Buhler-Freeman Management, LLC is the Debtor in a Chapter 11 bankruptcy case. On August 8, 2021, Debtor commenced a voluntary bankruptcy case by filing a Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN. The Effective Date of the proposed Plan is April 1, 2022.

A.      **Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)     **WHO CAN VOTE OR OBJECT,**

(2)     **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3)     **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)**     **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

**(5)**     **WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)**     **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.**     **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.**     **Time and Place of the Confirmation Hearing**

The hearing where the Court will determine whether or not to confirm the Plan will take place at a yet to be determined date at 701 Broadway Ave., Nashville, TN 37203. Notice will be given regarding the date and time of this hearing.

**2.**     **Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

4

Steven L. Lefkovitz

618 Church St., Ste. 410

Nashville, TN 37219.

Your ballot must be timely received or it will not be counted.

### 3. Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon

Steven L. Lefkovitz, counsel for Debtor, by the date and time set by the Clerk's office.

### 4. Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Steven L.

Lefkovitz, (615) 256-8300, 618 Church St., Ste. 410, Nashville, TN 37219.

## C. Disclaimer

The Debtor has made no separate appraisal of the Debtor's personal property assets but

the Debtor believes that values contained herein are accurate. The Debtor believes this to be a

fair and equitable estimate of the value of its assets as of May 6, 2019.  The information

contained in this Disclosure Statement is provided by the Debtor. The Plan Proponent represents

that everything stated in the Disclosure Statement is true to the Proponent's best knowledge. The

Court has not yet determined whether or not the Plan is confirmable and makes no

recommendation as to whether or not you should support or oppose the Plan.


## II.

## BACKGROUND

## A. Description and History of the Debtor's Business

The corporation was formed in Tennessee on or about 1999 to provide real estate space

for a restaurant to operate a business. The goal was to generate rental income from ownership in

the commercial property while also having an asset that would appreciate in value. From 1999,

to July of 2018, Ellendales was the tenant in the building.  Currently, the Debtor does not have a

tenant in the building.

5

**B.    Management of the Debtor Before and After the Bankruptcy**

The Debtor managed its own affairs prior to the bankruptcy and will continue to manage its affairs after the bankruptcy. The Debtor is managed by Julie Buhler, who holds a 100% interest in the company. During the pendency of the bankruptcy proceeding, Ms. Buhler has received any compensation from the Debtor due to the Debtor not generating any income.

**C.    Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

Debtor's financial difficulties stem from the loss of Ellendales as a tenant in July of 2018. Ellendales was a restaurant operated by Julie Buhler, the chief manager of the Debtor.As a result of losing Ellendales as a tenant, the Debtor has not been able to find a new tenant to lease the space and thus had no rental income. The reason that the building was unable to be rented was that it needed significant repairs, and the Debtor did not have the money to make these repairs. Prior to filing the Chapter 11, the Debtor was subject to a pending foreclosure sale and needed relief to stop the foreclosure of the real property.

The Debtor had filed a Chapter 11 to stop a foreclosure proceedings by PrimsBank (the first mortgage holder on the Debtor's property) in the United States Bankruptcy Court for the Middle District of Tennessee, case number 319-07025.  In that case, the Debtor proposed a plan which would pay 100% of the claims of the Debtor through the liquidation of the real estate, which was the principal asset of the Debtor's estate.

In complying with the plan, the Debtor obtained a contract for 1.5MM for the purchase of the property.  Julie Buhler, as president of the Debtor, accepted that contract and then based on on the anticipated closing, the Chapter 11 case was dismissed.  Unfortunately, the closing on the real estate fell through.  And PrimsBank reinitiated the foreclosure proceedings.  This was the factor for the filing of this case.

Meanwhile, Julie Buhler opened in another location a restaurant known as Phat Bites.  Ms. Buhler was able to obtain through PPP loans, grants, and insurance proceeds on the Ellendales property nearly $300,000.00.  This was sufficient funds to make the needed repairs and get the property in shape to be leased.  The Debtor estimates that once the repairs are made, which

should be in the spring of 2022, the Debtor should generate $12,500.00 in rent, which is the basis for funding a plan.

**E.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

> The Chapter 11 proceedings was commenced on August 8, 2021.
> An application for the appointment of Lefkovitz and Lefkovitz was filed on August 10, 2021.
> A plan and disclosure statement was filed on August 10, 2021.
> Currently, there are no adversary proceedings pending.

**2.      Other Legal Proceedings**

There are no other legal proceedings currently pending involving the Debtor.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

There is no projected recovery of any preferential or fraudulent transfers.

**4.      Procedures Implemented to Resolve Financial Problems**

The Debtor has a real estate agent that has been employed by the bankruptcy court to sell the real property, and who is actively marketing the property to potential buyers.

**5.      Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit A. See also the Debtor's financial history set forth in the monthly operating reports which are summarized in Exhibit B.

<div align="center">

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

</div>

**A.      What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

### 1.      Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all

administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

There are no administrative claims under the plan except for any quarterly fees owed by the Debtors, which is estimated at approximately $250 per quarter, that may become due between now and the confirmation of the case. If the Debtor is able confirm the plan in the fourth quarter of 2021, then the Debtor estimates that only two more quarterly fees will become due before the case can be confirmed and close. Additionally there may be unpaid attorney's fees for Steven L. Lefkovitz, Counsel for the Debtor-in-possession, which are subject to the approval of the Court. These fees would not be due on the effective date and Counsel for the Debtor will agree to defer payments in a mutually agreed upon payment plan. At this time, Debtor does not believe that there will be any additional attorney fees over and above the initial retainer that was paid in this case.

2.      **Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years form the date of the Order of Relief entered in this case.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|----------------|-----------|
|        |             |                |                |           |

| | Priority claim of: <br> • Name = Tennessee Department of Revenue <br> • Principal owed = $303,041.49 <br> • Total claim amount = $303,041.49 <br> • Total unsecured balance = $0.00 | N | Y | This claimant shall receive its contractual payment of $5,718,77 which shall bear interest at the rate of 5% per annum. The payments herein shall continue until this claim is paid in full. |
|---|---|---|---|---|
| | Priority claim of: <br> • Name = Tennessee Department of Revenue <br> • Principal owed = $27,500.00 <br> • Total claim amount = $27,500.00 <br> • Total unsecured balance = $0.00 | N | Y | This claimant shall receive its contractual payment of $518.96 which shall bear interest at the rate of 5% per annum. The payments herein shall continue until this claim is paid in full. |

| **Description** | **Amount Owed** | **Treatment** |
|---|---|---|

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| ● Name = Metropolitan Trustee<br><br>● Type of tax = Real Property Taxes<br><br>     for 2739 Old Elm Hill Pike<br><br>● Date tax assessed = 2019 | $12,585.92 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br><br><br>● End date<br><br><br>● Interest Rate %<br>● Total Payout Amount | This claimant shall receive its contractual payment of $279.97 which shall bear interest at the rate of 12% per annum. The payments herein shall continue until this claim is paid in full. |

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| ● Name = Metropolitan Trustee<br><br>● Type of tax = Real Property Taxes<br><br>     for 2739 Old Elm Hill Pike<br><br>● Date tax assessed = 2017-2018 | $32,400.13 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br><br><br>● End date<br><br><br>● Interest Rate %<br>● Total Payout Amount | This claimant shall receive its contractual payment of $720.72 which shall bear interest at the rate of 12% per annum. The payments herein shall continue until this claim is paid in full.. |

| Description | Amount Owed | Treatment |
|---|---|---|
| | | |

| | | | |
|---|---|---|---|
| ● Name = TN Department of Labor *<br><br>● Type of tax = Taxes<br><br>● Date tax assessed = 2016-2018<br><br>*Debtor reserves the right to object to this claim. | $7,233.17 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br><br><br>● End date<br><br>● Interest Rate %<br>● Total Payout Amount | This claimant shall receive its contractual payment of $136.50 which shall bear interest at the rate of 5% per annum. The payments herein shall continue until this claim is paid in full. |

C.      **Classified Claims and Interests**

1.      **Classes of Secured Claims**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 3-A | Secured claim of:<br>• Name = Prinsbank<br>• Collateral description = 2739 Old Elm Hill Pike, Nashville, TN 37214<br>• Collateral value = $2,000,000.00<br>• Priority of security int. = First<br>• Principal owed = $802,205.49<br>• Total claim amount = $802,205.49<br>• Total unsecured balance = $0.00 | N | Y | This claimant shall receive its contractual payment of $4,652.47 which shall bear interest at the rate of 3.5% per annum. The payments herein shall continue until this claim is paid in full. | |

| 3-B | Secured claim of:<br>• Name = Watson Law Group, PLLC<br>• Collateral description = 2739 Old Elm Hill Pike, Nashville, TN 37214<br>• Collateral value = $2,000,000.00<br>• Priority of security int. = Unknown<br>• Principal owed = $11,629.93<br>• Total claim amount = $11,621.93<br>• Total unsecured balance = $0.00 | N | Y | This claimant shall receive its contractual payment of $219.32 which shall bear interest at the rate of 5% per annum. The payments herein shall continue until this claim is paid in full.. | |

| 3-C | Secured claim of:<br>• Name = Metropolitan Government – Nashville Davidson County<br>• Collateral description<br>• Collateral value = $0.00<br>• Priority of security int. = fully secured<br>• Principal owed = $541.64<br>• Total claim amount = $541.64 | N | Y | This claimant shall receive its contractual payment of $12.05 which shall bear interest at the rate of 12% per annum. The payments herein shall continue until this claim is paid in full.. | |

2.     **Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Code Sections 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

There are no other priority claims in this case.

**3.      Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).

The following chart identifies this Plan's treatment of the class containing <u>all</u> of

Debtor's general unsecured claims:

| <u>CLASS #</u> | <u>DESCRIPTION</u> | <u>IMPAIRED</u> **(Y/N)** | <u>TREATMENT</u> | |
|---|---|---|---|---|
| 4 | General unsecured claims <br><br> • Total amount of claims = $4,731.79 | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval <br> • Pymt amt/interval <br> • Begin date <br><br><br> • End date <br><br> • Interest rate <br> • Total payout | This claimant shall receive its contractual payment of $89.29 which shall bear interest at the rate of 5% per annum.  The payments herein shall continue until this claim is paid in full. |

*The claim filed by Regions Bank shows an overdrawn account for a different corporation, J&M Restaurants, LLC, and Debtor reserves the right to object to the claim.

Monthly payments shall be made on a pro rata basis based on the value of each unsecured claim.

Any plan payments returned to the Debtor by unsecured creditors shall become property of the reorganized

Debtor.

**4.      Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the

Debtor is a corporation, entities holding preferred or common stock in the

Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and

limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | Interest holders | N | Will maintain all stock |

**D.**    **Means of Performing the Plan**

    **1.**    **Funding for the Plan**

The Plan will be funded by the following: Proceeds from the rental income from real property

    **2.**    **Post-confirmation Management**

The Debtor shall be responsible for post-confirmation management.

    **3.**    **Disbursing Agent**

Debtor shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**C.**    **Risk Factors**

The proposed Plan has the following risks: The Plan, due to its nature of being funded through the sale of real property, maintains a possibility of not being able to find a buyer.

**D.**    **Other Provisions of the Plan**

    **1.**    **Executory Contracts and Unexpired Leases**

16

**a.  Assumptions**

There are no leases or executory contracts that the debtor wishes to assume.

**b.  Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

All executory contracts and leases not explicitly assumed above.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM OTHER THAN A GOVERNMENTAL CLAIM IS _____, AND GOVERNMENTAL CLAIM IS _____. Any claim based on the rejection of a contract or lease will be barred unless theclaim is made within thirty (30) days of the order confirming the Chapter 11 Plan.

**2.  Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**3.  Retention of Jurisdiction.**

The Court shall retain jurisdiction for purposes of granting a discharge to Debtor, determining any and all objections to the amounts of claims, applications for compensation and expenses, to enforce the provisions of the Plan, to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, and to determine such other matters as may be provided for in the Order of the Court confirming the Plan.

**E.  Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues

17

this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Debtor is unaware of any tax consequences which the Plan will have on the Debtor's tax liability.

<div align="center">

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

</div>

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan. Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

**A.**     **Who May Vote or Object**

     **1.**     **Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

     **2.**     **Who May Vote to Accept/Reject the Plan**

<div align="center">18</div>

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM OTHER THAN A GOVERNMENTAL IS _____, AND GOVERNMENTAL CLAIM IS _____. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b. What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that class 3 and 4 are impaired and that holders of claims in this class are therefore entitled to vote to accept or reject the Plan. The Proponent believes that all other classes are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the

19

Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least

two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7. Treatment of Nonaccepting Classes

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 3 and 4 if that class does not vote to accept the Plan.

### B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total

21

allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: Creditors will receive at least as much as they would in a Chapter 7 liquidation case.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation. (See Exhibit A for a detailed explanation of how the following assets are valued. This information is provided by the Debtor.) :

| ASSETS VALUE AT LIQUIDATION VALUES: | |
|---|---|
| CURRENT ASSETS | |
| a.   Security Deposits | $ 0.00 |
| b.   Checking Accounts | $ 0.00 |
|     TOTAL CURRENT ASSETS | $ 0.00 |
| FIXED ASSETS | |
| a.   Real Estate | $ 2,000,000.00 |
|     TOTAL FIXED ASSETS | $ 2,000,000.00 |
| OTHER ASSETS | |
| a.   Accounts receivable | $ 0.00 |
| b.   Inventory | $ 0.00 |
| c.   Domain | $ 0.00 |
|     TOTAL OTHER ASSETS | $ 0.00 |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$2,000,000.00** |
| | ========= |
| **Less:** Secured creditor's recovery | $ 834,610.50 |
| **Less:** Chapter 7 trustee fees and expenses | $ 0.00 |
| **Less:** | |

| | |
|---|---|
| Chapter 11 administrative expenses | $ 0.00 |
| **Less:** Priority claims, excluding administrative expense claims | $ 0.00 |
| **Less:** Debtor's claimed exemptions | $ 0.00 ========= |
| (1) Balance for unsecured claims | $ 0.00 |
| (2) Total amt of unsecured claims | $ 438,870.02 |

**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION:     =  100.00%**
**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:        =  100.00%**

[1]/       Note:    If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

Below is a demonstration, in tabular format, which shows that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| **CLAIMS & CLASSES** | **PAYOUT PERCENTAGE UNDER THE PLAN** | **PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION** |
|---|---|---|
| Priority Claims | 100% | 100% |
| Class 3 – Secured Claims | 100% | 100% |
| Class 4 – Unsecured Claims | 100% | 100% |

**C.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

23

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $ 0.00 |
| **To Pay:** Administrative claims | - 0.00 |
| **To Pay:** Statutory costs & charges | - 0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | - 0.00 |
| Balance after paying these amounts............... | $ 0.00 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 0.00 | Cash in DIP Account now |
| + 0.00 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + 0.00 | Borrowing |
| + 0.00 | Capital Contributions |
| - 0.00 | Administrative Expenses |
| $ 0.00 | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial statements which include both historical and projected financial information. Please refer to the monthly operating reports for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR

24

FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay the creditors through the sale of real property, which is the single asset of the debtor. The Plan Proponent contends that the liquidation of this asset is possible and has a real estate agent assisting in that process.

**D.      POTENTIAL NON-COMPLIANCE OF THE ABSOLUTE PRIORITY RULE**

**NOTICE is hereby given that the proposed plan potentially does not comply with the absolute priority rule of Section 1129(b) of the Bankruptcy Code, and absent consent of creditors, the plan may be non-confirmable.  Creditors and parties in interest should consider that fact before voting for or against the plan of reorganization.**

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.      Discharge**

This Plan provides that on the date the case is confirmed, the Debtor shall be discharged from any debt that arose before confirmation of the Plan to the extent specified in §1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in §1141(d)(6)(A), or (iii) of a kind specified in §1141(d)(6)(B). After the confirmation date of the Plan creditors' claims against the Debtor will be limited to the debts described in the plan.

**B.      Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.** **Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.** **Post-Confirmation Status Reports**

The Debtor shall furnish post-confirmation quarterly reports by the 15th of the month following the end of the quarter. This obligation of the Debtor shall continue after the Final Decree is entered in this matter until all Plan payments have been completed.

**E.** **Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.** **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

26

the order of confirmation.

**G.**     **Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

file a motion with the Court to obtain a final decree to close the case.

Date: AUGUST 10, 2021

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Steven L. Lefkovitz, No. 5953
STEVEN L. LEFKOVITZ
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN  37219
Phone: (615) 256-8300
Fax:     (615) 255-4516
Email: slefkovitz@lefkovitz.com

</div>

27

# VI.

## SUPPORTING DECLARATIONS
## EXHIBIT A - LIST OF ALL ASSETS

| LIQUIDATION ANALYSIS | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| Market Value | Secured Value | Equity | Description | | |
| $2,000,000.00 | $834,610.50 | 1,165,389.50 | Real Estate | | |
| | | | | | |
| $2,000,000.00 | $834,610.50 | 1,165,389.50 | Totals | | |
| | | | | | |
| Liquidation Value of Estate | | | | | |
| | | | | | |
| Net Value of Estate | | 1,165,389.50 | | | |
| Less Trustee Fees | | 0.00 | | | |
| | | | | | |
| Amount Available for ALL Creditors | | 1,165,389.50 | | | |
| | | | | | |
| LIQUIDATION ANALYSIS | | | | | |
| | | | | | |
| Market Value | Secured Value | Equity | Description | | |
| $2,000,000.00 | $834,610.50 | 1,165,389.50 | Real Estate | | |
| | | | | | |

28

**EXHIBIT B – DEBTOR'S MONTHLY INCOME AND EXPENSES DURING THE PENDANCY OF THE BANKRUPTCY CASE**

| Income & Expenses | | | |
|---|---|---|---|
| | | | |
| | JULY 21 | AUG 21 | |
| Income | $0.00 | $0.00 | |
| Expense | $0.00 | $0.00 | |
| Profit | $0.00 | $0.00 | |
| | | | |
| | | | |
| | | | **Average** |
| | | | $0.00 |
| | | | $0.00 |
| | | | $0.00 |

## EXHIBIT C - LIST OF GENERAL UNSECURED CLAIMS

| EXHIBIT C - LIST OF GENERAL UNSECURED CREDITORS | | | |
|---|---|---|---|
| Name | Insider | Impaired | Amt |
| REGIONS BANK* | N | Y | $4,731.79 |
| | | | |
| **Total Amount** | | | $4,731.79 |

*The overdrawn account provided by Regions Bank is for a different corporation and debtor reserves the right to object to this claim.